## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

GLE SCRAP METAL, INC. a foreign profit corporation authorized to do business in Florida,

     Plaintiff,

v.                                   Case No.:

TIAN TAN, an Individual, and TY     **Jury Trial Demanded**
INTERNATIONAL LLC, a Florida Limited Liability Company,

     Defendants.

_____)

## <u>VERIFIED COMPLAINT</u>

**COMES NOW**, Plaintiff, GLE Scrap Metal, Inc. ("GLE" or "Plaintiff"), by and through its undersigned counsel, sues Defendants, TIAN TAN ("Tan") and TY INTERNATIONAL, LLC ("TY") (collectively "Defendants") and in support thereof, state as follows:

### <u>PARTIES, JURISDICTION AND VENUE</u>

1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1332, and 1836.  There is a federal question under 28 U.S.C. 1836 and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

2.    Venue is proper pursuant to 28 U.S.C. § 1391(a) as a substantial part

of the events giving rise to this claim occurred in this judicial district.

3.     Defendants regularly do business in Florida.

4.     Tan negotiated the underlying contract in this matter in Florida, the terms of the underlying contract provides that Michigan law governs the interpretation of the contract, and the services performed under the contract were performed in Florida, throughout the United States, and internationally.

5.     GLE Scrap Metal, Inc. is a Michigan company authorized to do business in the State of Florida, with its Florida office located at 1464 S. Ronald Reagan Blvd., Longwood, Florida 32750.

6.     TY International, LLC, is a Florida Limited Liability Company organized and existing under the laws of Florida, with its principal place of business located in 3713 Ethan Lane, Orlando, Florida 32814.

7.     Tian Tan is an individual believed to be residing in China or in Walnut, Los Angeles County, California.

## GENERAL ALLEGATIONS

8.     GLE is a full-service, all-in-one recycling company with operations throughout the United States.  A true and correct copy of Danny Zack's Affidavit ("Zack Affidavit") is attached hereto as **Exhibit "A."**  GLE currently recycles in excess of 250 million pounds of metal scraps each year. *Id. at* ¶ 4.  GLE specializes in purchasing, processing, and trading large volumes of ferrous and nonferrous

commodities for domestic mills and global end-users while offering customers competitive pricing. *Id. at ¶ 4.*

9.     TY and Tan created an application known as Doctor Scrap (www.doctorscrap.com) alleging to be a highly effective technological application that aims to assist businesses in the Recycling industry. *Id. at ¶ 5. .* This technology is aimed at identification, valuation, and trading platforms for bulk scrap recycling providing a peerless solution to identify and standardize the mixed scrap in bulk. *Id. at ¶ 5.*

### Trade Secrets and Proprietary Information

10.     GLE has a unique and proprietary purchasing strategy focused on the metallic content of the recyclables. *Id. at ¶ 6.* GLE has spent the last twenty years traveling all over the world finding the best consumers to match the appropriate supplier and consumer. *Id. at ¶ 6.* GLE uses this knowledge combined with market information and consumer supplier pairing to maximize its profit within the processing, and trading of metals. *Id. at ¶ 6.* GLE uses its understanding of the global markets to sell products at the correct time in the market giving the supplier the option to fix the product price and the consumer the option to fix the product price, leaving GLE with Profit in the middle. *Id. at ¶ 6.*

11.     GLE's trade secrets include, but are not limited to, analyzing and targeting—through formulaic measures—specific recyclable products, and using

derivatives to hedge risk and purchase scrap in the U.S and sell to global consumers. *Id. at ¶ 7.* Uniquely, GLE targets products made of mixed metals to maximize returns and has created formulas of product valuation that allow GLE's traders to buy material and give an immediate price indication to secure the goods faster than the competition. *Id. at ¶ 7.* GLE relies on internal documents to value the metal on the buy and sell side that are proprietary and confidential. *Id. at ¶ 7.* Further, GLE created price sheets, consolidated price sheets, and formulas to create product values based on the current market. *Id. at ¶ 7.* GLE's pricing strategies, formulas, and the complex method it uses for its derivatives, recovery data, and consumer reports on outcomes is proprietary knowledge specific to GLE. *Id. at ¶ 7.*

12. Tan created an application—now known as Doctor Scrap—for GLE while employed at GLE using GLE's intellectual property and tangle property such as photos of the product and processes of the company. These formulas are built with the formulas and formulaic methods of GLE's inner workings and business strategies. *Id. at ¶ 8.*

13. Understanding how to pair suppliers and their recyclables and with consumers and their specific needs is an artform of which is not public knowledge

or readily available to all in the scrap metal industry.  *Id. at ¶ 9.*

### *Tan's Employment and Restrictive Covenants*

14.     Tan began working with GLE on or about June 19, 2017, as Director
of International Marketing.  *Id. at ¶ 10.*  Tan executed an Employee Confidentiality,
Non-Solicitation, and Non-Competition Agreement with GLE according to the
position held at the time.  *Id. at ¶ 10.*  True and correct copies of the Non-Compete
Agreement are attached hereto as **Exhibit "B."**

15.     On or about May 30, 2018, Tan was promoted to Vice President of
International Business whereon he entered into a new employment agreement
("Employment Agreement") along with an Employee Confidentiality, Non-
Solicitation, and Non-Competition Agreement with GLE ("Non-Compete
Agreement").  *See* Zack Affidavit, *¶ 11.* .  True and correct copies of the Employee
Agreement and Non-Compete Agreement are attached hereto as **Exhibit "C"** and
**Exhibit "D",** respectively.

16.     Specifically, Tan agreed to the he would not directly or indirectly
commit the following actions during the two-year Restraint Period subsequent to
termination of his employment with GLE:

> a. Solicit, recommend or induce the employment of any
> Company Employee;
> b. Request or advise any Customer, Supplier, Vendor or
> Referral to withdraw, curtail or cancel its relationship with the
> Company; or purposely divert from the Company or
> affirmatively attempt to adversely influence the Company's

business relationship with any of its Customers, Suppliers, Vendors, accounts, employees and/or agents;

c. Attempt to solicit, solicit or provide competitive services to any Customer or Supplier in the Company;

d. Purchase or acquire any material or products from any Vendor, with the purpose of competing with the Company.

*See* Ex. C, Employment Agreement, Paragraph 7.2 (a)-(e).  *See* Zack Affidavit, ¶ 12.

17.    Tan also agreed to a Confidentiality provision (Confidential Information defined in paragraph 7.1(b) of the Employment Agreement) which specifically states:

The Employee covenants and agrees that, before, on or after the date of execution of this Agreement, he shall not, directly or indirectly, disclose or make available to any person, firm, company, association, partnership, limited liability company, or other entity for any reason or purpose whatsoever, or use or cause to be used in any manner adverse to the interests of the Company any Confidential Information. The Employee further agrees that all Confidential Information in his possession that is written or other tangible form (together with all copies or duplicates thereof) shall at the time of the termination of his employment be delivered to the Company and shall not be retained by him, or furnished to any third party, either by copy, sample, electronic mail, facsimile or verbal communication.

*See* Ex.C, Employment Agreement, paragraphs 7.1(b) and 7.3. *See* Zack Affidavit, ¶ 13.

18.    In addition, Tan agreed and acknowledged within the Non-Compete Agreement that he would have access to trade secrets and other confidential information of GLE.  *See* Zack Affidavit, ¶ 14.  Tan also agreed and acknowledged

that he would receive valuable training at GLE's expense which constituted a substantial investment by GLE allowing Tan to gain a significant competitive advantage to GLE's competitors. *Id.  See* Ex. D, Non-Compete Agreement, Pg. 1.

19.    As Vice President of International Business, Tan worked onsite with GLE's Chief Executive Officer, other Vice President's, and Logistics on a daily basis at GLE's Florida location.  *See* Zack Affidavit, ¶ 15.  Tan was compensated to buy and sell products and grow GLE consumer channels and create trading efficiencies for GLE and its consumers.  *Id. at ¶ 15.*  Tan was trained by GLE product valuation formulas, target product market, marginal requirements, suppliers, and consumers. *Id. at ¶ 15.*

20.    As such, Tan had full access to GLE supplier, consumers, pricing formulas, and was privy to hedge risk mitigation strategies.  *Id. at ¶ 16.*  In addition, Tan had full range access to consumer information, shared drives, company software databases, pricing files, buy/sell records, servers, email records, GLE product photos and consumer recovery details and valuations of products.  *Id. at ¶ 16.*  Essentially, Tan had unlimited and unrestricted access to all GLE's data and records other than financial reporting.  *Id. at ¶ 16.*

21.    After approximately three years of Tan training and closely working with GLE, Tan created his own company, TY.  TY's Articles of Organization were filed on February 6, 2020. Tan was the only authorized manager listed.  *Id. at ¶ 17.*

A true and correct copy of the Articles of Organization are attached hereto as **Exhibit "E."**   At this time, GLE was unaware of any competitive nature or unauthorized use of its trade secrets or proprietary information on behalf of Tan or TY.  *See* Zack Affidavit, ¶ 17.

22.    On or about August 19, 2021, Tan requested pictures from GLE for his application.  *See* Zack Affidavit, ¶ 18.  A true and correct copy of the text messages between Tan and GLE regarding the application are attached hereto as Composite **Exhibit "F."**  From August 20, 2021 to about August 27, 2021, Tan discussed, sampled the application with GLE's intellectual and tangible property, and alerted GLE of his deign of an application for GLE—what is now known as Doctor Scrap and being used in competition with GLE.  *Id.  See* Zack Affidavit, ¶ 18.  Shortly after GLE's knowledge of the application for GLE's business, GLE began planning its future business to include the application and even hired a Chief Technology Officer to help further assist with the build out and incorporation of the application into GLE's business model.  *See* Zack Affidavit, ¶ 18.

23.    Much to GLE's surprise, on September 6, 2021, Tan effectively resigned from his position with GLE claiming he would be returning to China and would not be able to return to the US for reasons unknown.  *Id. at* ¶ *19.*  A true and correct copy of Tan's resignation is attached hereto as **Exhibit "G."**

24.    Pursuant to the terms of the Agreement, GLE provided Tan with a

severance package and the Parties relationship ended on amicable terms. Notably, the Restrictive Period was in effect for two years from Tan's resignation on September 6, 2021. *See* Zack Affidavit, ¶ 20.

### *Violations of Restrictive Covenants and Threat to Disseminate Trade Secrets*

25.     On January 17, 2022, GLE was notified that Tan was promoting a new business venture called Doctor Scrap by TY International LLC sent by what appears to be a blast email.   *Id. at ¶ 21.*   A true and correct email regarding the Doctor Scrap application ("Solicitation Email") is attached hereto as **Exhibit "H."** This application is property of GLE.   *See* Composite Exhibit F.

26.     As evidenced by the Solicitation Email, Tan claims Doctor Scrap is "a team of scrap experts from GLE and CIMCO" with over 40 years of scrap knowledge in the domestic and international scrap market network to create the world's first AI global scrap platform.   *See* Zack Affidavit, ¶ 22.   *See* Ex. H, Solicitation Email.   Importantly, GLE currently has nothing to do with TY or Doctor Scrap and CIMCO is one of GLE's current suppliers. *See* Zack Affidavit, ¶ 22.

27.     Upon further investigation, GLE found Tan was falsely advertising GLE's business volumes and profits along with Tan's contributions to GLE.   *See* Zack Affidavit, 23.   A true and correct copy of the publicly shared false

representations ("False Reps.") are attached hereto as **Exhibit "I."**

28.    Along with Tan's false advertising of GLE, Tan has also contacted GLE suppliers and consumers regarding the Doctor Scrap business venture in an attempt to solicit their business. *See* Zack Affidavit, ¶ 24.  As evidenced by a recent online article related to a similar business venture as Doctor Scrap—Dr. Recycling, Tan is using GLE's images collected over years and consumer and supplier contacts to give the customer the ability to upload the photos of their recyclables to create a budding war and pair the customer with the best global buyer of the good—this is exactly what GLE does for its customers.  *Id. at ¶ 24.*  A true and correct copy of the article discussing Tan's business ventures in the scrap industry ("Tan Article") is attached hereto as **Exhibit "J."**  Moreover, Tan, as a result of his training and access to vital GLE trade secrets, is connecting GLE suppliers with GLE consumers and identifying the value of the product, which will create substantial financial harm to GLE as a competitor in the scrap industry as it would essentially supplant itself with GLE's customers.  *See* Zack Affidavit, ¶ 24. *See* Ex. J, Tan Article.

29.    Specifically, Tan's product AI is using images taken at GLE facilities, GLE customer facilities and GLE consumers facilities—all proprietary information of GLE.  *See* Zack Affidavit, ¶ 25. *See* Ex. J, Tan Article. *See* Ex. F, Text re: Application.   Furthermore, Tan has contacted GLE's vendors and suppliers,

namely, Spartan Recycling, Cohen Recycling, Midwest Industrial Metals, Imperial Group, CIMCO Recycling, and Hibbs and Hallmark.  *See* Zack Affidavit, ¶ 25. However, it appears Tan may have contacted many more of GLE's vendors and suppliers through mass email or text distributions.  *See* Zack Affidavit, ¶ 25.  *See* Ex. H, Solicitation Email.

30.    Lastly, on March 15, 2022, Tan solicited to at least one of GLE's vendors, through text message, and indicated that Doctor Scrap would be hosting the online convention for the Institute of Scrap Recycling Industries ("ISRI") the week of March 21 through March 24, 2022.  *See* Zack Affidavit, ¶ 26.  A true and correct copy of the text message ("Vendor Solicitation Text") is attached hereto as **Exhibit "K."**  Tan indicated that he and Doctor Scrap could help sell scrap and introduce the vendor to over 200+ suppliers in the U.S. Within the text, Tan also provided a link to click on in order to join the ISRI online convention with Doctor Scrap—https://qgxztsw.gotin.online. *Id*.  *See* Zack Affidavit, ¶ 26.

31.    To be sure, Tan is using GLE's formulaic methods and formulas to create an application in an attempt to eliminate supplier and consumer needs for GLE services. *See* Zack Affidavit, ¶ 27.  In addition, Tan is using GLE's strong brand to market his product that is of a competitive nature to GLE.  *Id. at* ¶ 27.  Tan has purchased products from GLE suppliers and sold products to GLE consumers. *Id. at* ¶ 27.  Tan is offering to share supplier contact lists to the industry and has

taken without authorization, GLE's customer lists, supplier lists, contacts, price formulas, photos, recovery data, ideas discussed at GLE, price history and historical price valuation information. *Id. at ¶ 27.* Tan is offering to teach a class online on how GLE does business. *Id.* Tan stole GLE's intellectual property and is using it for his own personal gain and in competition with GLE. *Id.*

32.  Tan plans to disseminate GLE's trade secrets of its scrap metal business and inner workings to the public at the ISRI convention, both online and in person at Doctor Scrap's booth. *Id. at ¶ 28.*

33.  Imperatively, if other competitive scrap companies understand GLE's buying and sell formulas, strategies, consumer/supplier pairing, marginal requirements, risk mitigation strategies, and product valuation methods, GLE would be left without the suppliers and a substantial and unquantifiable loss of revenue. *Id.*

34.  Pursuant to the terms of the contract, the prevailing party in any legal proceeding or dispute is entitled to recover its attorneys' fees and costs.

35.  GLE has engaged the undersigned counsel and is obligated to pay a reasonable fee for their legal services. *Id.*

36.  All conditions precedent to the filing of this complaint have occurred by performance, waiver, or otherwise.

<u>COUNT I</u>
## FEDERAL TRADE SECRETS ACT-INJUNCTIVE RELIEF
*(18 U.S.C. 1836(2)(A)(ii))*

37.     GLE incorporates by reference the allegations contained in Paragraphs 1 through 36 above as if fully set forth herein.

38.     Defendants have misappropriated Plaintiff's trade secret property, as defined in 18 U.S.C. 1839.

39.     An order issued pursuant to Rule 65 of the Federal Rules of Civil Procedure, or another form of equitable relief would be inadequate to achieve the purpose of 18 U.S.C 1836(2)(A)(ii) because Defendants would evade, avoid, or otherwise not comply with such an order due to the uncertain whereabouts of Defendant, Tan.

40.     Should this Court not issue an Order for injunctive relief, GLE's trade secrets will be publicized globally at the ISRI Convention which is set to occur on or about March 21 through March 24, 2022, online and in-person in Las Vegas, Nevada.  GLE will be irreparably harmed if other competitive scrap companies and similarly situated businesses learn and understand GLE's buying and sell formulas, strategies, consumer/supplier pairing, marginal requirements, risk mitigation strategies, and product valuation methods as GLE would be left without suppliers and a substantial and unquantifiable loss of profit and revenue. Likewise, the potential loss of Plaintiff's rights to enforce is intellectual property

rights, Plaintiff's loss of business opportunities through Defendants' usage of GLE's proprietary information and trade secrets, and the incalculable loss of future business that will result from Defendants' violations.

41.    The harm to GLE substantially outweighs the harm to the legitimate interests, if any, to TY, Tan, and any third parties who may be harmed by an Order of injunction as GLE's trade secrets are its property and dissemination of them would only harm GLE and leave any other party in the same unscathed position had the injunction not been ordered. TY and Tan are willfully and improperly using GLE's trade secrets to make a profit in the scrap metal industry.

42.    GLE is likely to succeed on the merits based on the information provided herein and within the Zack Affidavit.  Specifically, the trade secrets provided in paragraphs 10 through 12 herein fall within the defined term of trade secret pursuant to 18 U.S.C. 1839.  TY and Tan misappropriated GLE's trade secrets by improper means when Tan took such trade secrets among other proprietary information, including the application designed for GLE, without authorization from GLE after termination of his employment with GLE.

43.    TY and Tan have actual possession of GLE's trade secret information, intellectual property, and business records of GLE.  These tangible records include, but are not limited to, the application designed for GLE, customer lists, supplier lists, contacts, price formulas, photos, recovery data, ideas discussed at GLE, price

history and historical price valuation information.  These records may be seized at the convention in Las Vegas, Nevada from Doctor Scraps booth and/or directly from Tan through online or electronic means.

44.     If GLE were to proceed with notice to TY or Tan, GLE fears Tan or persons acting on concert with TY and Tan may destroy, move, hide, or otherwise make such matters inaccessible to the court.

45.     GLE has not publicized the requested seizure.

**WHEREFORE**, GLE requests this Court issue an order seizing all GLE's trade secrets and proprietary information and issue a preliminary or permanent injunction enjoining Defendants and all individuals and entities in active concert and participation with Defendants from, in any manner, either directly or indirectly, providing any individual or entity with GLE's trade secrets and proprietary and confidential information.

<u>COUNT II</u>
**RULE 65 — INJUNCTIVE RELIEF**
*(Fed. R. Civ. P. 65)*

46.     GLE incorporates by reference the allegations contained in Paragraphs 1 through 36 above as if fully set forth herein.

47.     GLE is likely to succeed on the merits based on the information provided herein and within the Zack Affidavit.  Specifically, the trade secrets provided in paragraphs 10 through 12 herein fall within the defined term of trade

secret pursuant to 18 U.S.C. 1839.  TY and Tan misappropriated GLE's trade secrets by improper means when Tan took such trade secrets among other proprietary information, including the application designed for GLE, without authorization from GLE after termination of his employment with GLE. Tan also has publicized his intention to share GLE's trade secrets and proprietary information to third parties at the ISRI Convention being held on March 21 through March 24, 2022.

48.     Furthermore, unlike Furstenau, Tan was subject to an executed employment agreement, covenants not to compete and disclosure, and subject to an entire non-compete agreement. Tan violated not only the agreements in question but also MUTSA and the Federal Trade Secrets Act.

49.     Should this Court not issue an Order for injunctive relief, GLE's trade secrets will be publicized globally at the ISRI Convention which is set to occur on or about March 21 through March 24, 2022, online and in-person in Las Vegas, Nevada.  GLE will be irreparably harmed if other competitive scrap companies and similarly situated businesses learn and understand GLE's buying and sell formulas, strategies, consumer/supplier pairing, marginal requirements, risk mitigation strategies, and product valuation methods as GLE would be left without suppliers and a substantial and unquantifiable loss of profit and revenue. Likewise, the potential loss of Plaintiff's rights to enforce is intellectual property rights, Plaintiff's loss of business opportunities through Defendants' usage of

GLE's proprietary information and trade secrets, and the incalculable loss of future business that will result from Defendants' violations.

50.     The harm to GLE substantially outweighs the harm to the legitimate interests, if any, to TY, Tan, and any third parties who may be harmed by an Order of injunction as GLE's trade secrets are its property and dissemination of them would only harm GLE and leave any other party in the same unscathed position had the injunction not been ordered. TY and Tan are willfully and improperly using GLE's trade secrets to make a profit in the scrap metal industry in competition with GLE.

51.     The public interest would be served by the issuance of the preliminary injunction and/or seizure of GLE's trade secrets and proprietary information as the issuance of injunctive relief will undoubtedly serve to advance important, well-recognized public interests. Namely, the parties' ability to freely contract should not be abridged, and the confidentiality provision should be enforced to protect trade secrets and businesses proprietary information.

**WHEREFORE**, GLE demands injunctive relief and judgment against Defendants in, pre- and post-judgment interest, costs, and reasonable attorneys' fees as provided in the Contracts and Statute, and any other relief the Court deems just and proper.

## COUNT III
## FEDERAL TRADE SECRETS ACT
*(18 U.S.C. 1836)*

52.   GLE incorporates by reference the allegations contained in Paragraphs 1 through 36 above as if fully set forth herein.

53.   Defendants have misappropriated Plaintiff's trade secret property, as defined in 18 U.S.C. 1839.

54.   Defendants' use of such trade secret property to the detriment of and in competition with Plaintiff constitutes willful and malicious misappropriation for which Plaintiff is entitled to injunctive relief, compensatory damages, and attorneys' fees as provided by 18 U.S.C. 1836.

**WHEREFORE**, GLE demands injunctive relief and judgment against Defendants in, pre- and post-judgment interest, costs, and reasonable attorneys' fees as provided in the Contracts and Statute, and any other relief the Court deems just and proper.

## COUNT IV
## MICHIGAN UNIFORM TRADE SECRETS ACT
*(MCL 445.1901)*

55.   GLE incorporates by reference the allegations contained in Paragraphs 1 through 36 above as if fully set forth herein.

56.   Defendants have misappropriated Plaintiffs' trade secret property, as defined in MCL 445.1902 (West).

57.     Defendants' use of such trade secret property to the detriment of and in competition with Plaintiffs constitutes willful and malicious misappropriation for which Plaintiffs are entitled to injunctive relief, compensatory damages, and attorneys' fees as provided by MCL 445.1905 (West).

**WHEREFORE**, GLE demands injunctive relief and judgment against Defendants in, pre- and post-judgment interest, costs, and reasonable attorneys' fees as provided in the Contracts and statutes, and any other relief the Court deems just and proper.

### COUNT V
### CONVERSION
### *(MCL 600.2919)*

58.     GLE incorporates by reference the allegations contained in Paragraphs 1 through 36 above as if fully set forth herein.

59.     Tan took, without GLE's authorization, GLE's property, intellectual property, and trade secrets and converted them to his own use and benefit.

60.     TY, through Tan, used and possess GLE's property, intellectual property, and trade secrets for its Doctor Scrap application with knowledge that GLE's property and trade secrets have been stolen from GLE.

61.     GLE has been damaged as a result of TY and Tan's stealing and conversion of GLE's trade secrets and property and is entitled to recover three times the amount of actual damages sustained, plus costs and reasonable attorney

fees.

**WHEREFORE**, GLE demands injunctive relief and judgment against Defendant in, pre- and post-judgment interest, treble damages, costs, and reasonable attorneys' fees as provided in the contracts and statutes, and any other relief the Court deems just and proper.

## COUNT VI
## BREACH OF CONTRACT

62.     GLE incorporates by reference the allegations contained in Paragraphs 1 through 36 above as if fully set forth herein.

63.     GLE and Tan, as competent business parties, mutually negotiated and executed the Employment Agreement and Non-Compete Agreement—a proper subject matter—for GLE to provide employment of services and payment upon those services in exchange and consideration for Tan to abide by the terms of the agreements and the restrictive covenants therein. The Parties were mutually obligated by the Agreements.

64.     Tan has breached the Employment Agreement and Non-Compete Agreement by misappropriating GLE's formulaic methods and formulas for personal gain.  In addition, Tan is using GLE's brand and name to market his product that is of a competitive nature to GLE.  Tan has purchased products from GLE suppliers and sold products to GLE consumers. Tan is offering to share supplier contact lists to the industry and has taken without authorization, GLE's

customer lists, supplier lists, contacts, price formulas, photos, recovery data, ideas discussed at GLE, price history and historical price valuation information.  Tan is offering to teach a class online on how GLE does business. All of the aforementioned are in violation of the Employment Agreement and Non-Compete Agreement.

65.    Plaintiff has performed its obligations under the Employment Agreement and Non-Compete Agreement.

66.    As a direct and proximate result of Defendant's breach of contract, Plaintiff has suffered damages in an amount to be determined at trial in excess of Seventy-Five Thousand Dollars ($75,000.00).

**WHEREFORE**, GLE demands injunctive relief and judgment against Defendant in, pre- and post-judgment interest, costs, and reasonable attorneys' fees as provided in the Contracts, and any other relief the Court deems just and proper.

## COUNT VII
## TORTIOUS INTEREFERENCE WITH
## BUSINESS RELATIONSHIP

67.    GLE incorporates by reference the allegations contained in Paragraphs 1 through 36 above as if fully set forth herein.

68.    Plaintiff has business, economic and contractual relationships with a number of suppliers, consumers, and vendors within the scrap metal industry.

69.     Defendants were aware, and had knowledge, of the existence of GLE's economic, business, and/or contractual relationships with its suppliers, consumers, and vendors within the scrap metal industry.

70.     Defendants have wrongfully and tortiously interfered with Plaintiff's business, economic and contractual relationships with GLE's suppliers, consumers, and vendors.

71.     The actions of Defendants in interfering with the economic, business and/or contractual relationships between GLE and its suppliers, consumers, and vendors was improper, wrongful, intentional, willful, malicious and without legal justification or privilege in breach of the Employment Agreement and Non-Compete Agreement.

72.     As a direct and proximate result of the improper, wrongful, intentional, willful, malicious, unjustified and non-privileged actions, Plaintiff has suffered significant injury and is entitled to compensatory damages in an amount to be proven at trial, as well as attorneys' fees.

**WHEREFORE**, GLE demands injunctive relief and judgment against Defendant in, pre- and post-judgment interest, costs, and reasonable attorneys' fees as provided in the Contracts, and any other relief the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully Submitted this <u>18th</u> day of March, 2022.

BRENNAN MANNA DIAMOND

<u>/s/Alicia M. Kupcinskas</u>
**Matthew T. Jackson- Lead Attorney**
Florida Bar No. 0736759
Alicia M. Kupcinskas
Florida Bar No. 117610
800 West Monroe Street
Jacksonville, Florida 32202
(904) 366-1500
(904) 366-1501 (facsimile)
Primary: mtjackson@bmdpl.com
Primary: amkupcinskas@bmdpl.com
Secondary: jmdurrance@bmdpl.com

and

Robert Q. Lee
Florida Bar No. 56723
Scott R. Rost
Florida Bar No. 779385
255 South Orange Avenue, Suite 700
Orlando, Florida 32801
(407) 392-0318 (Telephone)
(407) 392-0318 (Facsimile)
Primary: rqlee@bmdpl.com
Primary: srrost@bmdpl.com
Secondary: dsthompson@bmdpl.com

*Attorneys for Plaintiff,*
*GLE Scrap Metal, Inc.*

## VERIFICATION

Under penalties of perjury, I, Danny Zack, as the Chief Executive Officer of GLE Scrap Metal Inc., ("GLE"), declare that I have read the foregoing Verified Complaint, and the facts alleged therein are true and correct to the best of my knowledge and belief. Further, I am authorized to give this verification on behalf of GLE.

**GLE Scrap Metal Inc.**

By: _____
Danny Zack
CEO

Sworn to (or affirmed) before me by means of [ ✗ ] physical presence or [ ] online notarization, this _8th_ day of March, 2022, by Danny Zack.

_____
NOTARY PUBLIC

_____
(Print Name) Harmony Hardy
Notary Public, State of Florida at Large
My Commission Expires: 07-08-25

Notary Public State of Florida
Harmony Hardy
My Commission HH 150513
Expires 07/08/2025

Personally Known ___✗___ OR Produced Identification _____
Type of Identification Produced _____

4872-4919-4262, v. 1

24